UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LEUMAL FRED HENTZ,

    Plaintiff,

v.

L. GRUENWALD, et al.,

    Defendants.

Case No. 2:18-cv-00493-MC

OPINION AND ORDER

MCSHANE, District Judge:

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections (ODOC), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that prison officials violated his civil rights by disregarding his medical needs, reading his legal mail, discriminating against him based on his race and disabilities, and retaliating against him. The parties now move for summary judgment on all clams. I find that genuine issues of material fact preclude summary judgment on plaintiff's claim of retaliation alleged in his Eleventh Cause of Action. Plaintiff fails to raise a genuine issue of fact with respect to his remaining claims, and summary judgment in favor of defendants is granted in all other respects.

1    - OPINION AND ORDER

DISCUSSION

Plaintiff alleges twelve claims against ODOC prison officials arising from incidents at Two Rivers Correctional Institution (TRCI), Oregon State Correctional Institution (OSCI), and Snake River Correctional Institution (SRCI). *See generally* Sec. Am. Compl. (ECF No. 85).[1] Plaintiff and defendants move for summary judgment on all claims. To prevail on their respective motions, the parties must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Cross motions for summary judgment are evaluated separately, with the non-moving party for each motion given "the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

A. Deliberate Indifference to Serious Medical Needs

In his First Cause of Action, plaintiff alleges that Nurse Practitioner (NP) Gruenwald exhibited deliberate indifference to his serious medical needs by discontinuing a physician's order for ice, a pillow, and stair restrictions to help with his chronic pain. In his Seventh and Eighth Causes of Action, plaintiff alleges that defendant Irving, the OSCI Health Service Manager, and Dr. Hanson denied him ice packs and an extra mattress, contrary to the recommendations of other medical providers.

NP Gruenwald discontinued previous orders for ice packs, an extra pillow, and stair restrictions when plaintiff arrived at TRCI in September 2013. DiGiulio Decl. ¶ 12 (ECF No. 93). Plaintiff did not complain of muscular or skeletal pain until January 7, 2014, when he reported chronic pain in his legs. *Id*. at ¶ 13-15. On that day, NP Gruenwald wrote an order for

---

[1] Plaintiff's Second Amended Complaint includes fourteen claims. Plaintiff's Second Cause of Action was dismissed for failure to exhaust administrative remedies, and plaintiff's Fourteenth Cause of Action alleges only that each defendant participated in the deprivation of his constitutional rights.

2   - OPINION AND ORDER

ice and hot packs. *Id*. On January 15 and 21, 2014, plaintiff requested an extension of the ice and hot packs and an extra pillow and mattress. *Id*. ¶¶ 15-17. On February 5, 2014, NP Gruenwald reordered ice packs for plaintiff but found no medical need for the pillow or mattress. *Id*. ¶ 18.

On July 28, 2016, plaintiff was transferred from TRCI to OSCI. DiGiulio Decl. ¶ 44. On July 30, 2016, plaintiff requested ice packs. *Id*. ¶ 48. *Id*. Medical staff noted that plaintiff's ice order had expired, and on August 8, 2016, a physician's order for six months of ice packs was entered. *Id*.

In November 2016, plaintiff was seen by an outside specialist, who recommended an extra mattress, pain medication, and an extra pillow. *Id.* ¶ 49. Dr. Hansen approved the extra pillow and pain medication but not the extra mattress. *Id.* ¶ 50.

To sustain an Eighth Amendment claim for deliberate indifference, plaintiff must establish the existence of "a serious medical need" and show that "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference may be shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* Based on these facts, plaintiff fails to show that any of the defendants exhibited deliberate indifference toward his medical needs.

Plaintiff received most of the medical treatments he requested, including pain medication and ice packs. At most, the evidence shows that NP Gruenwald and Dr. Hanson disagreed with the recommendations of other care providers. However, it is well established that differences of opinion between medical providers regarding the appropriate course of treatment does not establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

3   - OPINION AND ORDER

Accordingly, summary judgment is granted in favor of defendants on plaintiff's First, Seventh, and Eighth Causes of Action.

B. Legal Mail

In his Fourth and Fifth Causes of Action, plaintiff alleges that defendant Perez violated his constitutional rights by opening a letter marked as "legal mail."

The letter in question was sent to plaintiff from the Oregon State Court Administrator's Office. Wold Decl. Att. 1 at 8 (ECF No. 92). "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail" entitled to constitutional protection. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (2017) (citation omitted). Even if Perez opened plaintiff's letter, he did not violate plaintiff's civil rights. *Id.* I recognize that ODOC defines mail from the courts as "legal mail"; however, a violation of ODOC regulations cannot support a cause of action under § 1983. *See* Or. Admin. R. § 291-131-0110(15) ("Legal Mail: Incoming or outgoing mail to or from an attorney, court, or court official which is clearly worded 'legal mail' on the addressee side of the envelope."). Moreover, ODOC regulations allow legal mail to be inspected for contraband. *Id.* § 291-131-0030(2).

Accordingly, defendants are entitled to summary judgment on plaintiff's Fourth and Fifth Causes of Action.

C. Disability Discrimination

In plaintiff's Tenth Cause of Action, he alleges that OSCI subjected him to disability discrimination by housing him in Unit 11 from December 2016 through November 2017. Plaintiff's cell was located on the middle tier of Unit 11, and, due to his inability to climb stairs, he could not participate in activities located in the dayroom on the bottom tier. Plaintiff maintains that OSCI's action violated § 504 of the Rehabilitation Act, which prohibits prison

4    - OPINION AND ORDER

officials from excluding prisoners with disabilities from receiving or participating in prison services. *See* 29 U.S.C. § 794; *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) (holding that § 504 of the Rehabilitation Act applies to inmates within state prisons).

Plaintiff cannot show that OSCI excluded him from prison services due to his disability. Plaintiff requested housing in Unit 11 when he first arrived at OSCI, and he was moved there when a cell became available. Wold Decl. Att. 9 at 15. When plaintiff complained that he could not access the lower tier of Unit 11, OSCI officials offered to move him to a different unit, and plaintiff declined. *Id.* Att. 9 at 5-6, 13-14. Thus, plaintiff chose to remain in Unit 11, and he cannot sustain a Rehabilitation Act claim against OSCI.

D. First Amendment Retaliation

Plaintiff's remaining causes of action allege that various defendants took retaliatory action against plaintiff after he raised complaints or filed grievances against prison officials. To prevail on a § 1983 claim for retaliation, plaintiff must establish that defendants took "adverse action" against him because of constitutionally protected conduct, and the action "chilled" the exercise of his First Amendment rights and failed to advance a "legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

1. Processing of Grievances

In his Third Cause of Action, plaintiff alleges that defendant Eynon, a Grievance Coordinator, retaliated against him by refusing to process five of his grievances in a timely manner. Sec. Am. Compl. ¶ 21-70.

The record reflects that plaintiff completed the grievance process for four of the five identified grievances. Wold Decl. Atts. 2-3, 6-7. Thus, plaintiff cannot show that Eynon

5   - OPINION AND ORDER

interfered with the grievance process or failed to process these grievances in a timely manner. Eynon denied the fifth grievance because it was not received within thirty days of the relevant incident, as required by ODOC regulations. *Id.* Att. 8; Or. Admin. R. 291-109-0150(2). Denying an untimely grievance in accordance with ODOC rules advances a legitimate penological purpose, and plaintiff fails to show retaliation on the part on Eynon. Accordingly, defendants' motion for summary judgment is granted on this claim.

2. Housing Assignments

In plaintiff's Sixth and Tenth Causes of Action, plaintiff alleges that defendant Wold discriminated and retaliated against him by denying him in honor housing in July 2016 and assigning him to an inaccessible housing unit in December 2016.[2]

While at TRCI, plaintiff was housed in an honor unit. In July 2016, plaintiff was transferred to OSCI for medical treatment. When plaintiff arrived at OSCI, Wold assigned him to a cell in Unit 13, which apparently is not an honor unit. Plaintiff further alleges that Wold assigned honor housing in Unit 11 to a white inmate who transferred to OSCI at the same time and had the same custody classification as plaintiff.

On December 9, 2016, plaintiff was moved to a cell in Unit 11. Due to the tiered configuration of Unit 11 and the location of his cell, plaintiff was unable to access the dayroom located on the bottom tier. Plaintiff maintains that Wold's housing decisions in July and December 2016 were motivated by discrimination and retaliation.

---

[2] As discussed above, plaintiff's Tenth Cause of Action also alleges a Rehabilitation Act claim and names OSCI as the only defendant. However, OSCI is immune from suit in federal court under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Construing plaintiff's allegations liberally, Wold was arguably responsible for the allegedly retaliatory housing assignment in December 2016.

6   - OPINION AND ORDER

Plaintiff submit no evidence suggesting that Wold knew of plaintiff's grievances prior to his transfer to OSCI or that her housing decisions were motivate by discrimination or retaliation. In fact, the evidence of record shows that Wold's initial placement of plaintiff was informed by available cell space and plaintiff's custody designations. *See id.* Atts. 10-11. Further, plaintiff had requested placement in Unit 11, and he was moved there in December 2016 when space became available. Wold Decl. Att. 9 at 14-15. After plaintiff complained that he could not access the dayroom, OSCI officials offered to move him to Unit 13. *Id.* Att. 9 at 5-6, 13-14.

Thus, plaintiff fails to show that Wold took adverse action against him or that her actions failed to further legitimate penological interests.

3. <u>Confiscation of Comb</u>

In his Ninth Cause of Action, plaintiff alleges that Officer Ruggieri and Captain Nelson retaliated against him by confiscating his comb after other correctional officers had allowed him to possess the comb.

On December 4, 2016, plaintiff was returning from the recreation yard at OSCI and proceeded through a security point where he was required to empty his pockets. Officer Ruggieri confiscated plaintiff's comb because, per Captain Nelson, combs with long handles like plaintiff's are prohibited. Wold Decl. Att. 4 at 2, 7. Plaintiff was told he could mail out his comb or permit ODOC to cut off the handle; plaintiff declined both options. *Id.* Att. 4 at 13-14. Plaintiff maintains that his comb was confiscated in retaliation for his past grievances.

Plaintiff presents no evidence that Officer Ruggieri knew of plaintiff's past grievances or confiscated the comb for retaliatory purposes. Plaintiff does not dispute that combs with long handles are prohibited, and he presents no direct or circumstantial evidence of retaliation. Further, plaintiff was given the option of keeping the comb without the handle, and he apparently

7    - OPINION AND ORDER

refused. Accordingly, plaintiff fails to show that Officer Ruggieri or Captain Nelson took adverse action against him because of his complaints and grievances.

4. Removal From Bakery Position

In his Eleventh Cause of Action, plaintiff alleges that defendants McFadden, Macias, and Wilson retaliated against him by removing him from a bakery job because he complained about his co-workers' racially discriminatory treatment.

While at OSCI, plaintiff was assigned to a job in the bakery. On November 6, 2016, plaintiff filed a Discrimination Complaint and alleged that his co-workers were subjecting him to a racially hostile work environment. The OSCI Diversity Coordinator spoke with plaintiff and asked if OSCI staff were engaging in discriminatory conduct. Plaintiff answered "No," and the Diversity Coordinator instructed plaintiff to speak with his supervisor.

On November 8, 2016, plaintiff spoke with McFadden and Macias and informed them about his co-workers' discriminatory conduct and his opposition to discrimination in the bakery. On December 10, 2016, McFadden removed plaintiff from his bakery position without providing an explanation. In response to a grievance filed by plaintiff, McFadden stated that plaintiff was removed from his position because did not follow recipe directions, "wasted product and money," and caused "dissention" among bakery workers. Wold Decl. Att. 5 at 18. McFadden did not cite specific instances of conduct to support her proffered reasons for removing plaintiff.

Defendants argue that plaintiff's removal from the bakery did not chill the exercise of his First Amendment rights, because plaintiff had no right to a bakery position and continued to utilize the grievance process after his removal from the bakery. To defeat summary judgment, plaintiff need not prove that the alleged retaliatory action violated a constitutional or protected right. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim,

plaintiff need not "establish an independent constitutional interest" in the subject of the adverse action); *see also Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (retaliation claim may be based on the filing of a false violation report); *Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985) (First Amendment claim may be based on a retaliatory transfer to a different prison). Further, plaintiff need not demonstrate a "total chilling of his First Amendment rights," but only that defendants' challenged conduct "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568-69 (citation and internal quotation marks omitted).

It is undisputed that McFadden and perhaps Macias removed plaintiff from his bakery position on December 10, 2016, approximately one month after plaintiff complained about racial hostility from his co-workers. *McCollum v. Cal. Dep't Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (circumstantial evidence of a retaliatory motive may include a defendant's knowledge of the plaintiff's protected conduct combined with proximity in time between the protected conduct and the alleged retaliation). Removal from a desired prison job could arguably prevent a prisoner of "ordinary firmness" from speaking out about discrimination.

Next, defendants argue that McFadden and Macias removed plaintiff because of his poor work habits, citing their response to plaintiff's grievance. However, the record includes signed statements from plaintiff's co-workers attesting that he was a hard worker, followed recipe directions and did not waste product, and had an excellent attitude. Wold Att. 5 at 6-7. Evidence showing that defendants' reasons for plaintiff's removal were false or pretextual, combined with defendants' knowledge of his complaints and the timing of his removal, raises a genuine issue of fact whether plaintiff was removed because of his opposition to discrimination. *McCollum*, 647 F.3d at 882.

Defendants also assert qualified immunity on all claims, without providing argument or legal authority regarding plaintiff's specific claim of retaliation. *See* Defs.' Mot. Summ. J. at 20-21 (ECF No. 91). I am not inclined to find qualified immunity absent a more developed record and argument relevant to the specific circumstances presented by plaintiff's claim. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("We have repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'") (citation omitted); *White v. Pauly,* 137 S. Ct. 548, 552 (2017) (per curiam) ("As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case.").

With that said, plaintiff cannot sustain this claim against defendant Wilson. Liability under § 1983 arises upon a showing of personal participation, and a supervisor is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The record reflects that Wilson only reviewed plaintiff's grievance appeal and did not participate in plaintiff's removal from the bakery. Wold Decl. Att. 5 at 9.

Accordingly, defendants' motion for summary judgment on this claim is granted with respect to Wilson and denied with respect to McFadden and Macias.

5.  Transfer to SRCI

Finally, in his Twelfth and Thirteenth Causes of Action, plaintiff alleges that Captain Nelson transferred him from OSCI to SRCI in retaliation for plaintiff's complaints and grievances, and that his guitar was damaged as a result of the transfer.

Defendants argue that a claim of retaliatory transfer is not properly before the Court, because plaintiff did not allege this claim initially and the Court specifically forbade plaintiff from alleging new claims in his Second Amended Complaint. *See* Order (ECF No. 84).

Regardless, plaintiff fails to present any direct or circumstantial evidence of retaliation by Captain Nelson arising from plaintiff's transfer to SRCI. Plaintiff's conclusory allegations are not sufficient to defeat summary judgment. *Taylor*, 880 F.2d at 1045 (conclusory allegations of retaliatory motive are insufficient).

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 91) is DENIED with respect to plaintiff's Eleventh Cause of Action against McFadden and Macias and GRANTED in all other respects. Plaintiff's Cross-Motion for Summary Judgment (ECF No. 88) is DENIED.

IT IS SO ORDERED.

DATED this 5th day of June, 2020.

s/ Michael J. McShane<br>
Michael J. McShane<br>
United States District Judge